SOUTHERN DEVELOPMENT CO. et al. v. FARMERS' LOAN & TRUST CO. et al.

(Circuit Court of Appeals, Fifth Circuit. February 25, 1897.)

No. 505.

RAILROAD RECEIVERSHIPS—PREFERRED DEBTS—ADVANCES TO PAY FLOATING DEBT, ETC.

Money advanced to a railroad company at various times to pay floating debts and interest coupons, and bonds loaned it to be pledged for the price of necessary rails to be purchased, and which bonds it is unable to return, do not constitute a debt which is entitled to a preference over the mortgage bonds upon the appointment of a receiver in foreclosure proceedings. Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., 79 Fed. 202, followed.

Appeal from the Circuit Court of the United States for the Eastern District of Texas.

The statement in the case of Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co. (No. 503 of the docket of this court) 79 Fed. 202, shows the nature of cause No. 185, consolidated cause No. 198, and cause No. 227 of the docket of the United States circuit court for the Eastern district of Texas. The Southern Development Company, the intervener in the present cause, was the complainant in cause No. 185, which suit was instituted on February 16, 1885. After the dismissal of that cause, without prejudice to the right of the Southern Development Company to assert its claims, if any it had, in such manner as it might be advised, the Southern Development Company, on March 31, 1887, filed its intervention in cause No. 198, substantially praying for the same relief against all the railways, moneys, revenues, and other assets of the Houston & Texas Central Railway Company as it prayed for the petition of intervention now before this court, and filed in cause No. 227, on December 16, 1891. On April 30, 1889, the Southern Development Company filed suit upon its claim against the railway company in the district court of Dallas county, Tex., and obtained judgment against said railway company for $858,113.15, with interest at 8 per cent. from the date of the judgment, May 17, 1889.

By its intervention, filed as aforesaid, in cause No. 227, the Southern Development Company claims:

"That the Houston & Texas Central Railway Company, defendant in this cause, is justly and legally indebted unto your petitioner in the full sum of $745,861.07, with interest at the rate of six per cent. per annum from November 15, 1886, until paid, for this, to wit: For moneys advanced by petitioner to said defendant company, at its request, at various times, to enable it to pay for supplies, labor, repairs, operating and managing expenses, proper equipment and useful improvement, and other necessary expenses of its railway, by which defendant's railway has been kept in safe running order, and its property and business increased, and rendered more valuable to the bondholders under the various mortgages described in the bills of complaint filed in this cause, as well as to all other creditors of said company. Petitioner further avers that said indebtedness was contracted under the circumstances following, to wit: That said advances were so made to defendant for the purposes aforesaid, and in consideration of its promise to pay the same out of the earnings of its railway; and that the said indebtedness was and is, in equity and good conscience, a charge superior in rank to all mortgage bonds and coupons issued by defendant upon the income and property of said railway company; but that said defendant, instead of paying said indebtedness so due to your petitioner out of the earnings of its railway, has entirely failed to pay the same, or any part thereof, and that the truth is, and your petitioner so charges, that said defendant has used a large amount of its earnings for the payment of coupons upon its bonds issued under the several mortgages described in the bills of complaint herein, although the holders of said coupons were only entitled to receive payment thereof after defendant had paid your petitioner the amount advanced and expended in the manner and for the purposes hereinabove set forth; and that upon a just accounting between your petitioner, the defendant company, and the bondholders, it will be found, as the fact is, that the bondholders have already received large amounts of money from the railway company beyond the amounts to which such bondholders were in any way entitled, and to the loss, detriment, damage, and injury of your petitioner, which amounts, to the extent of the indebtedness of said railway company to this petitioner, should be made good to your petitioner out of the earnings of the property now in the possession of this court, and out of the proceeds of such property, if the same should be sold by any decree thereof. Petitioner further avers that for about one-half of its said indebtedness it has received and holds as collateral security, jointly with the Morgan's Louisiana & Texas Railroad & Steamship Company, eight hundred and eighty certain bonds of the issue commonly known as the 'General Mortgage Bonds' of said defendant company, and the said indebtedness aforesaid will be entitled to a credit for such a proportionate part of the proceeds of sale of said general mortgage bonds, whenever a sale thereof is

made, as will inure to your petitioner under said pledge, but that such proportionate part of said proceeds of sale will fall far short of the amount of the part of such indebtedness for which said bonds are so pledged. Petitioner further shows: That, in addition to the indebtedness hereinabove set forth, said defendant company is also indebted to your petitioner in the full sum of one hundred and seventy thousand dollars ($170,000), with interest at the rate of six per cent. per annum from November 1st, 1884, until paid, for this, viz.: That your petitioner, at the request of the defendant company, did lend to it, returnable on demand, one hundred and seventy first mortgage bonds of the Galveston, Harrisburg & San Antonio Railway Company, Western Division, to be by the defendant railway company pledged as security for a certain indebtedness due by said defendant company to the Lackawanna Iron & Coal Company, said indebtedness being for steel rails by defendant company purchased from said Lackawanna Company for the betterment and improvement of its railway aforesaid, and which were by said defendant company actually used for the purpose of such betterment and improvement of the railway of said defendant company, and not for purposes of independent construction. That said indebtedness is now past due, with interest as aforesaid, and that, unless such indebtedness is paid, the said security therefor is liable to be sold in liquidation thereof. That although your petitioner has demanded from said railway company the return of the Galveston, Harrisburg & San Antonio Railway Company's bonds so loaned to it for the purpose above stated, the said railway company has failed to return such bonds, and, as your petitioner is informed and believes, in its embarrassed condition, and on account of the fact that its property is in the hands of this honorable court, is wholly unable to return the same to your petitioner. Petitioner avers that said steel rails were used, not for the purpose of independent construction, but for the purpose of betterment and repair of the railways described in the mortgages of the various issues described in the bills of complaint herein, and that said rails have been an increment to the value of the property described in said mortgages; and that your petitioner has the right to claim, and does claim, that the revenue of said railway company should be applied to the payment of said indebtedness, with interest as aforesaid, and with priority over the claims of any bondholders or coupon holders whomsoever."

The Southern Development Company also claims in its intervention that the mortgage provided that, if the trustee should acquire possession of the railway under the mortgage, he should pay all floating indebtedness of the company out of the gross earnings. In point of fact, the mortgage contains no such provision. By proper pleadings, the Farmers' Loan & Trust Company, on February 1, 1896, and Moran Bros. and Henry K. McHarg, interveners pro interesse suo, on January 13, 1896, objected to and opposed the allowance of the demand of the Southern Development Company as a preferential claim. Moran Bros. and Henry K. McHarg specially pleaded the statute of limitation of two and four years. The intervention of the Southern Development Company was referred to a master. Inter alia, he found that the advances were made on open accounts ranging from July 15, 1884, to March 23, 1885, and aggregating $754,-571.59. All of the items are for money loaned. Some of the items specify the purpose for which the loan was made, such as "for the payment of interest coupons on first mortgage bonds." A number of items are stated as being for money advanced, or for paying debts, or to take up notes of the company, without further explanation. In addition to the open account, the master found that the Southern Development Company loaned to the railway company 170 bonds of the Galveston, Harrisburg & San Antonio Railroad Company, in order that the railway company might pledge the same to the Lackawanna Iron & Coal Company to obtain steel rails. By agreement of counsel these 170 bonds were valued at $157,250. The master found that the railway company gave 310 of its general mortgage bonds as security for the indebtedness and for the return of the other 170 bonds just mentioned. The master found that the 310 bonds were subsequently credited on the account at par,—i. e. for $810,000,—but that this credit was largely in excess of the market value of said bonds. From the figures reported by the master it would appear that, adding the total found due on the open account to the $157,250 due for the bonds

loaned to the Lackawanna Company, and deducting the $310,000 credited for the 310 bonds pledged as security, and deducting also certain partial payments, leaves the railway company indebted to the Southern Development Company in the sum of $506,025.34. The master further found: "I find that during the year 1884, and for several years prior thereto, the finances of the defendant company were in an embarrassed condition. Its expenses, including fixed charges, interest, etc., exceeded its income for the year 1881, $670,839.42; 1882, $430,177.16; 1883, $570,979.25; 1884, $991,481.44; and it reasonably appears that, without the advances made by petitioner, as herein recited (constituting about one-sixth of its floating debt as it existed in 1884), it would not have been able to maintain its credit and meet its obligations. It appears that of the money so advanced by petitioner $327,198.97 was applied by the defendant company to the discharge of interest due upon its bonds. * * * I find that by the advances so made by petitioner to said defendant railway company, the railways of said defendant company were kept in safer running order, and its property and business increased, and rendered more valuable to the bondholders under the mortgage described in the bill of complaint filed in this case, as also to all other creditors of the defendant railway company; that said advances were so made to said defendant railway company for the purposes aforesaid, and without them said company would not have been able to maintain its credit, and meet its obligations; and that said advances were made in consideration of the promise of the defendant railway company to pay the same." The master's report was not excepted to. The lower court confirmed the report, and dismissed the intervention. The Southern Development Company appealed.

E. B. Kruttschnitt, for appellant.

L. W. Campbell, for appellees Moran Bros. and Henry K. McHarg.

Before TOULMIN, MAXEY, and PARLANGE, District Judges.

PARLANGE, District Judge (after stating the facts as above). The views expressed by us in the case of Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co. (No. 505 of the docket of this court) 79 Fed. 202, apply to this case, and are decisive of the issues here presented. The case of Morgan's L. & T. R. & S. S. Co. v. Texas Cent. Ry. Co., 137 U. S. 171, 11 Sup. Ct. 61, is in point. We see no error in the action of the circuit court in dismissing the petition of the intervener, and the decree appealed from is therefore affirmed.